```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK

----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :   21-CR-458 (CBA)
           v.               :
                            :   April 20, 2022
                            :
ERNESTO HERACLITO WEISSON     :
PAZMINO,                    :   Brooklyn, New York
               Defendant.    :
                            :
----------------------------X


          TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
           BEFORE THE HONORABLE SANKET J. BULSARA
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          BREON PEACE, ESQ.
                             U.S. ATTORNEY
                             BY: BENJAMIN WEINTRAUB, ESQ.
                             ASSISTANT U.S. ATTORNEY
                             271 Cadman Plaza East
                             Brooklyn, New York  11201


For the Defendant:           DANIEL RASHBAUM, ESQ.
                             MNR Firm
                             2 South Biscayne Blvd, Suite 2530
                             Miami, Florida 33131




Court Transcriber:           ARIA SERVICES, INC.
                             c/o Elizabeth Barron
                             274 Hovey Road
                             Milo, ME 04463
                             Aria@leinen.net




Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

```
 1              THE CLERK:  Criminal cause for plea hearing,

 2    case number 21-CR-458, United States v. Mr. Weisson.

 3    Sorry if I'm mis-pronouncing your name.

 4              Counsel, please state your appearances for

 5    the record, starting with government counsel.

 6              MR. WARDEN:  Good afternoon, your Honor.

 7    Randall Warden from the Department of Justice fraud

 8    section on behalf of the government.  With me is

 9    Benjamin Weintraub from the U.S. Attorney's Office and

10    Special Agent Jeff Lomaron (ph) from the Internal

11    Revenue Service.

12              MR. RASHBAUM:  Good afternoon, your Honor.

13    Dan Rashbaum and with me is my client, Ernesto Weisson.

14              THE DEFENDANT:  Good afternoon, your Honor.

15              THE COURT:  Just give me a moment to get

16    settled.  Can the parties look at the agreement, page

17    11, paragraph 18?  Is the government rethinking the

18    meaning of the 14th Amendment?  Why is this paragraph

19    here given that I understand that Mr. Weisson was born

20    in the United States?

21              MR. WARDEN:  I apologize, your Honor.  We

22    had understood that he was a naturalized citizen.  If

23    he was born in the United States, then this wouldn't

24    apply.

25              THE COURT:  Okay.
```

```
1          MR. WARDEN:  By the way, your Honor, we
2   didn't anticipate that the facts would apply in terms
3   of the de-naturalization provisions here but it --
4          THE COURT:  That's sort of irrelevant in
5   that I have to apprise him of the applicable
6   consequences.  And it's not an applicable consequence,
7   particularly when you read the last line of paragraph
8   18, which is not stated in the hypothetical and makes
9   no sense if Mr. Weisson is not -- is not a naturalized
10  but is a natural-born citizen.
11         MR. WARDEN:  That's absolutely correct, your
12  Honor.  That's our mistake, our apologies.
13         THE COURT:  Okay.  Counsel, you agree that
14  your client was born in the United States and that
15  paragraph 18's references to de-naturalization are
16  inapplicable here?
17         MR. RASHBAUM:  Yes, your Honor.
18         THE COURT:  Okay.  Therefore, paragraph 1(h)
19  on page 2 is also incorrect.
20         MR. WARDEN:  That's correct, your Honor.
21         THE COURT:  I will still nonetheless apprise
22  the defendant that if for some reason, because I do it
23  in every criminal case, he were not a United States
24  citizen, the consequences of a plea would be potential
25  removal from the United States, but I will not discuss
```

1   de-naturalization because that's inapplicable.

2          Mr. Weisson, I'm advised by your counsel

3   that you wish to plead guilty to certain charges that

4   are contained in the indictment that has been filed

5   against you, is that correct?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  This is a serious decision.  I

8   need to make sure that you understand what it means to

9   plead guilty, what the consequences of pleading guilty

10  would be, and what rights you would be giving up if you

11  did in fact choose to plead guilty.  What that means

12  is, I'm going to have to ask you some questions, you

13  have to give me some answers, and it's important that

14  the answers that you give to me are under oath.  So if

15  you could follow the direction of my deputy, Mr.

16  Manson, he will then swear you in, okay?

17         THE DEFENDANT:  Sure.  Should I stand?

18         THE COURT:  You can stand, sure.

19         (Defendant is sworn.)

20         THE COURT:  Sir, do you understand that now

21  you've been sworn, that your answers to my questions

22  are subject to the penalties of perjury or making a

23  false statement if you don't answer truthfully?

24         THE DEFENDANT:  Yes, your Honor, I

25  understand.

```
1              THE COURT:  Just to be clear, what that

2    means is, if I ask you a question and you tell me a

3    lie, the government could prosecution you for making a

4    false statement and use the statements you make today

5    in such a prosecution.

6              Do you understand that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  I first want you to understand,

9    sir, that this is Judge Amon's case.  She is the judge

10   who will ultimately decide whether to accept your plea

11   as well as to determine your sentence.  If you wish,

12   you have the absolute right to have your plea taken by

13   her.  Alternatively, I will listen to your plea.

14   Although there's not a court reporter present, this

15   proceeding is being recorded.  A transcript will be

16   made of the recording, which will be provided to Judge

17   Amon, and she will review it in connection with your

18   sentencing.

19             Do you understand that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Do you wish to give up your

22   right to proceed before Judge Amon and do you wish

23   instead to proceed before me?

24             THE DEFENDANT:  I wish to proceed, your

25   Honor.
```

1              THE COURT:  Okay.  Are you making this

2    decision voluntarily and of your own free will?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Has anyone pressured you or

5    forced you or threatened you in any way to proceed

6    before me?

7              THE DEFENDANT:  No, your Honor.

8              THE COURT:  I have what's been marked as

9    Court Exhibit 1, what is a consent to have a plea taken

10   before a United States Magistrate Judge.

11             Mr. Weisson, can you just confirm that this

12   is your signature on the document?

13             THE DEFENDANT:  Yes, your Honor, that's my

14   signature.

15             THE COURT:  Based on the colloquy, in other

16   words the questions I asked and the answers I received,

17   as well as Court Exhibit 1, which reflects Mr.

18   Rashbaum, his counsel's signature, Mr. Weisson's

19   signature, as well as the signature of the government,

20   I find that Mr. Weisson is consenting to proceed before

21   me and that his consent is voluntarily and of his own

22   free will.

23             Sir, before I can accept your plea, there

24   are some things I have to ask you about your

25   background, things like that, to assure myself that any

1    plea would be valid.  If you don't understand any of my

2    questions, let me know and I will re-word them, okay,

3    sir?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  What's your full name, sir?

6              THE DEFENDANT:  Ernesto Heraclito Weisson

7    Pazmino.

8              THE COURT:  Mr. Weisson, how old are you,

9    sir?

10             THE DEFENDANT:  54.

11             THE COURT:  How far did you get in school?

12             THE DEFENDANT:  I have a master's degree.

13             THE COURT:  Okay.  And what was your

14   master's degree in?

15             THE DEFENDANT:  In architecture and

16   urbanism.

17             THE COURT:  Architecture and urbanism?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Do you have any trouble speaking

20   or understanding English, sir?

21             THE DEFENDANT:  No, your Honor.

22             THE COURT:  Are you under the care of a

23   doctor or psychiatrist for any reason at this point?

24             THE DEFENDANT:  No, your Honor.

25             THE COURT:  In the last 24 hours, have you

```
 1   had any drugs or medicine or pills?

 2               THE DEFENDANT:  I only have a daily high

 3   blood pressure pill.  That's the only thing I have

 4   taken.

 5               THE COURT:  What is the name of that

 6   medicine, do you remember?

 7               THE DEFENDANT:  I think it's Lasurtan (ph)

 8   or something like that.

 9               THE COURT:  Did you take that today or

10   yesterday?

11               THE DEFENDANT:  Yes, your Honor.

12               THE COURT:  You took it today?

13               THE DEFENDANT:  Yes.

14               THE COURT:  When you take that medicine,

15   does it interfere with your mental cognition or ability

16   to understand what's going on here today?

17               THE DEFENDANT:  No, your Honor.

18               THE COURT:  How about any other medicine?

19               THE DEFENDANT:  No, no other.

20               THE COURT:  In the last 24 hours, have you

21   had any alcoholic beverages?

22               THE DEFENDANT:  No, your Honor.

23               THE COURT:  Have you ever been treated or

24   hospitalized for any drug addiction or alcoholism?

25               THE DEFENDANT:  No, your Honor.
```

1              THE COURT:  Have you ever been hospitalized

2   or treated for any mental health condition or emotional

3   health condition?

4              THE DEFENDANT:  No, your Honor.

5              THE COURT:  Is your mind clear here today,

6   sir?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  You understand what's going on?

9              THE DEFENDANT:  Yes, I understand, your

10  Honor.

11             THE COURT:  Sir, you have, as someone who's

12  been charged in a criminal case in federal court,

13  certain rights.  Your first right is your right to

14  counsel.  That's your right to a lawyer.  You have a

15  right to have a lawyer represent you from the time

16  you're arrested, through any trial, and any appeal.  If

17  you couldn't afford a lawyer, the Court would appoint a

18  lawyer for you.

19             Do you understand that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Is Mr. Rashbaum, who is seated

22  next to you, your lawyer?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  If at any time today, for

25  whatever reason, because you have a question or you

1   just need to consult, any reason at all you need to

2   consult with him, you just let me know and I'll permit

3   you time to speak with him.

4           Do you understand that?

5           THE DEFENDANT:  Yes, your Honor, I

6   appreciate it.

7           THE COURT:  Okay.  Have you had any

8   difficulty communicating with him up to now?

9           THE DEFENDANT:  No, your Honor.

10          THE COURT:  Have you had enough time to

11  discuss with him your decision to enter a guilty plea

12  today?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Are you fully satisfied with the

15  representation that you've been provided by him?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Counsel, have you discussed this

18  matter with your client?

19          MR. RASHBAUM:  Yes, your Honor.

20          THE COURT:  Have you had enough time to

21  discuss with him his decision to enter a plea today?

22          MR. RASHBAUM:  Yes, your Honor.

23          THE COURT:  Have you had any difficulty

24  communicating with him?

25          MR. RASHBAUM:  No difficulty at all.

1          THE COURT:  Are you satisfied that he

2   understands the rights he would be waiving if he were

3   to enter a plea of guilty?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Do you believe he's capable of

6   understanding the proceedings?

7          THE DEFENDANT:  Absolutely.

8          THE COURT:  Do you have any doubt at all

9   about his competence to enter a plea?

10          MR. RASHBAUM:  No, your Honor.

11          THE COURT:  Have you advised him of the

12   maximum and minimum sentence and fine that could be

13   imposed upon him in this case?

14          MR. RASHBAUM:  Yes, your Honor.

15          THE COURT:  Have you discussed with him the

16   operation of the federal sentencing guidelines and how

17   those guidelines could affect him?

18          MR. RASHBAUM:  Yes, your Honor.

19          THE COURT:  Mr. Weisson, you are charged in

20   a document that's called an indictment, okay?  Do you

21   have a copy of that document?

22          THE DEFENDANT:  Not a copy here but I did

23   receive a copy at a certain point.

24          THE COURT:  Did you have an opportunity to

25   read that document and the charges in it?

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  And you discussed the charges in

3    it with your lawyer?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  I understand that you would be

6    entering a plea today to Count 1 in that indictment,

7    okay?  I need to make sure you understand a couple of

8    things, okay?  One is, you understand what you're

9    charged with, okay?  So what I'm going to do is explain

10   to you what that count is and what the government has

11   charged you with, okay?

12          THE DEFENDANT:  Yes.

13          THE COURT:  The second thing I'm going to

14   explain to you is, by pleading guilty, you are waiving

15   your right to a jury trial.  You are waiving your right

16   to have the government demonstrate your guilt during a

17   trial.  What I'm going to explain to you is what the

18   government would have to prove at a trial in order for

19   a jury to return a guilty verdict against you on this

20   count.

21          Do you understand that?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  So first I'm going to explain to

24   you the charge, and the second thing is, I'm going to

25   explain to you what the government would have to prove

 1   if you did have a trial, in order for a jury to return
 2   a guilty verdict against you, okay?
 3           The first count in this indictment, which I
 4   understand is what you wish to plead guilty to, is
 5   conspiracy to commit wire fraud, okay?  The government
 6   alleges that approximately between August of 2013 and
 7   April of 2018, you entered into an illegal conspiracy
 8   or illegal agreement, that you did that with a number
 9   of individuals, two of whom are mentioned in the
10   indictment, and that illegal agreement, the purpose of
11   that agreement was to commit wire fraud.
12           Specifically, the government alleges that
13   the purpose of the scheme was to defraud investors and
14   potential investors in Biscayne Capital and obtain
15   money and property from them using false pretenses or
16   statements or promises, and that scheme was to be
17   carried out using the wires, and the wires can be
18   things like email, telephone, et cetera.  So the
19   government alleges that you entered into an illegal
20   agreement with others, the object of which was to
21   commit wire fraud and specifically, to defraud
22   potential investors of this company, Biscayne Capital,
23   and obtain money and property form them using false
24   representations or false pretenses, and part of that
25   scheme was to use the wires.

1          Do you understand that, sir?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  As I mentioned to you, I was --

4  I'm going to explain to you what the government has to

5  prove in order for a jury to return a guilty verdict on

6  this charge, conspiracy to commit wire fraud, okay?  In

7  a criminal case, as I'll explain in a little bit

8  greater detail to you in a moment, it's the government

9  that bears the burden of proof, okay?  They have to

10 prove your guilt beyond a reasonable doubt, okay?  In a

11 criminal case, in order for a jury to return a guilty

12 verdict, they have to prove certain things that are

13 called elements beyond a reasonable doubt.  If the

14 government fails to prove beyond a reasonable doubt any

15 one of the elements, the jury has to return a verdict

16 of not guilty.

17          Do you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  There are two elements to wire

20 fraud conspiracy, okay?  First is what we call the

21 unlawful agreement element.  That means that two or

22 more people formed an unlawful agreement.  The second

23 is that you joined that agreement or that conspiracy

24 knowingly and intentionally, right?  The agreement here

25 is alleged to be an agreement to commit wire fraud,

1    okay?

2            Do you understand that, sir?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Because it's important for --

5    the government has to prove in a trial that the

6    objective of the agreement was to commit wire fraud.

7    That was the aim of the conspiracy.  So I'm just going

8    to explain to you what the crime of wire fraud is so

9    you understand what they would have to prove was the

10   objective of the conspiracy.

11           Do you understand that?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  In order to prove the objective

14   of the conspiracy was wire fraud, they have to prove

15   that the agreement was intended to further what's known

16   as a scheme to defraud or a scheme to obtain money or

17   property using false statements or false promises.  The

18   objective also was to use wires in carrying out that

19   agreement.  In other words, wire fraud conspiracy, the

20   government would have to prove the objective was to

21   carry out either a scheme to defraud or a scheme to

22   obtain money or property using false statements or

23   false pretenses or things like that, and the objective

24   was to use the wires in committing that fraud.

25           Do you understand that, sir?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you have any questions about

3    anything I've explained to you, either about the charge

4    or what's necessary to prove -- the government would

5    have to prove at a trial?

6          THE DEFENDANT:  I have no questions, your

7    Honor.

8          THE COURT:  Does the government believe I've

9    correctly summarized the charge and what the government

10   would have to prove at a jury trial?

11         MR. WARDEN:  That's correct, your Honor.

12         THE COURT:  Counsel, do you agree?

13         MR. RASHBAUM:  Yes, your Honor.

14         THE COURT:  Mr. Weisson, I need to explain

15   to you what rights you'd be giving up if you were to

16   enter a guilty plea, okay?  First of all, you have the

17   absolute right to plead not guilty and maintain your

18   plea of not guilty.

19         Do you understand that?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  What that means is, even if

22   you're guilty, you have a choice.  It's up to you to

23   decide what to do, not your lawyer, not me, not the

24   government.  You can withdraw your previous plea of not

25   guilty and enter a guilty plea today or you can simply

1   go to trial based on your not guilty plea.

2          Do you understand that?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  If you plead not guilty to the

5   charge and you continue with that not guilty plea, you

6   have a right under the Constitution and laws of the

7   United States to what's known as a speedy and public

8   trial before a jury.  And at the trial, you'd have the

9   assistance of your lawyer and the trial would be about

10  the charges that are contained in the indictment.

11         Do you understand that?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  As I briefly mentioned before,

14  at a trial, you would be presumed innocent.  You would

15  not have to prove that you are innocent.  Under our

16  legal system, it's the government that bears the proof,

17  and it has to prove those elements that I explained to

18  you beyond a reasonable doubt for the jury to return a

19  guilty verdict.  And as I explained, if the government

20  failed to meet its burden of proof on that charge, the

21  jury would have to return a verdict of not guilty.

22         Do you understand that?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  In the course of any trial,

25  witnesses for the government would come to court and

1    testify in your presence.  Your lawyer would have an
2    opportunity to cross-examine those witnesses, to object
3    to evidence offered by the government, and to offer
4    evidence on your behalf.
5              Do you understand that?
6              THE DEFENDANT:  Yes, your Honor.
7              THE COURT:  Your lawyer would also have the
8    ability to subpoena, which means compel witnesses to
9    come testify in your case, in other words force
10   witnesses to come to court and testify in your case.
11             Do you understand that?
12             THE DEFENDANT:  Yes, your Honor.
13             THE COURT:  At a trial, you could testify if
14   you wished to in your own defense.  On the other hand,
15   you could not be forced to be a witness in your own
16   case and testify.  Under the Constitution and laws of
17   the United States, no person can be forced to be a
18   witness against himself.  And if you had a trial and
19   you chose not to testify, Judge Amon would be inquired
20   to inform the jury that the jury could not hold that
21   fact, the fact that you chose not to testify against
22   you.
23             Do you understand that?
24             THE DEFENDANT:  Yes, your Honor.
25             THE COURT:  If instead of going to trial,

1   you plead guilty today and if Judge Amon accepts your

2   plea, there will be no trial in the case.  You're

3   giving up your constitutional right to trial and each

4   of the other rights I've mentioned.  There's no trial

5   in the case.  The Court will simply enter a judgment of

6   guilt based on your plea today.

7                 Do you understand that?

8                 THE DEFENDANT:  Yes, your Honor.

9                 THE COURT:  If you do plead guilty, I have

10  to ask you some questions and you have to answer them,

11  and those questions are intended to assure me that you

12  are in fact guilty of a crime.  What that means is, you

13  have to answer my questions and acknowledge my guilt

14  (sic), and it means also that you're giving up your

15  right not to be a witness against yourself and not to

16  testify against yourself.

17                Do you understand that?

18                THE DEFENDANT:  Yes, your Honor.

19                THE COURT:  If you admit -- if you enter a

20  plea of guilty and if you admit to criminal conduct,

21  you cannot appeal to a higher court about whether or

22  not you committed a crime.  That will be over by your

23  guilty plea.

24                Do you understand that?

25                THE DEFENDANT:  Yes, your Honor.

1              THE COURT:  Are you willing to give up each

2    of the rights and your right to trial that I've

3    mentioned?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  I have before me an agreement

6    between you and the government, which has been marked

7    as Court Exhibit 2.  It's signed by the government, it

8    has the same signature on Mr. Weisson, as well as it's

9    signed by his counsel.

10             Mr. Weisson, do you have a copy of that in

11   front of you?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Okay.  Did you read this

14   agreement carefully?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Okay.  You discussed it with

17   your lawyer?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Do you believe you understand

20   it?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Does the government represent

23   that Court Exhibit 2 is the entirety of the

24   understanding that the U.S. Attorney's Office and the

25   DOJ have reached with Mr. Weisson?

1          MR. WARDEN:  Yes, your Honor.

2          THE COURT:  Counsel, have you read this and

3  reviewed this agreement with your client?

4          MR. RASHBAUM:  Yes, in its entirety.

5          THE COURT:  And you believe it contains the

6  entire agreement your client has entered into with the

7  government?

8          MR. RASHBAUM:  Yes, your Honor.

9          THE COURT:  Mr. Weisson, there are some

10 provisions here that I need to make sure you

11 understand, okay?  First, I need to explain to you what

12 the maximum penalties are on the conspiracy to commit

13 wire fraud charge, okay?  There's a term of

14 imprisonment, time in prison associated with this

15 criminal charge.  With conspiracy to commit wire fraud,

16 the imprisonment can be from zero years to twenty

17 years.

18          Do you understand that?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  You can also be sentenced to

21 what's known as supervised release.  What that is, is

22 after you have completed a term of imprisonment, time

23 in prison, you're released but you're subject to

24 certain conditions and supervision by the Probation

25 Department, okay?

```
 1              If you were to violate any of those
 2    conditions -- those conditions are things like, you
 3    cannot commit any crimes, you cannot have any narcotic
 4    drugs, things like that, okay?  If you violate whatever
 5    those conditions are, you could be sentenced to
 6    additional time in prison.  If you are sentenced to
 7    additional time in prison, you would not get any credit
 8    for the time you spent in prison before you were placed
 9    under these conditions or any time that you were under
10    these conditions before you were found to have violated
11    them.
12              Do you understand that?
13              THE DEFENDANT:  Yes, your Honor.
14              THE COURT:  Just so you understand, the
15    maximum amount of time of supervised release that you
16    could be sentenced to is three years.
17              Do you understand that?
18              THE DEFENDANT:  Yes.
19              THE COURT:  And as I explained to you, if
20    you violate a condition, you could be subject to
21    additional prison time without getting credit in the
22    way that I've discussed.  The maximum amount of that
23    additional prison time is two years.
24              Do you understand that?
25              THE DEFENDANT:  Yes, your Honor.
```

```
 1              THE COURT:  You are subject to a maximum
 2    fine of $250,000 or what is known as twice the gross
 3    gain or loss, whichever is greater.  You're also
 4    subject to restitution, which is payments to victims,
 5    and that's to be determined by the Court, and you're
 6    subject to a forfeiture amount, a forfeiture obligation
 7    that's set forth in this agreement.  Finally, you are
 8    subject to a mandatory $100 special assessment fee.
 9              Do you understand that?
10              THE DEFENDANT:  Yes, your Honor.
11              THE COURT:  Do you have any questions about
12    any of the penalties, prison time, supervised release,
13    forfeiture, restitution, any of those -- do you have
14    any questions about anything I just explained?
15              THE DEFENDANT:  No, your Honor.
16              THE COURT:  Okay.  I want you to go to page
17    3 of this agreement.  I will explain to you the
18    sentencing guidelines in a little bit more detail in a
19    moment, but I want you to look at the first sentence of
20    this paragraph.  This says that you are agreeing not to
21    challenge in an appeal either your sentence or your
22    conviction if Judge Amon gives you a sentence of 240
23    months or less.
24              Do you understand that?
25              THE DEFENDANT:  Yes, your Honor.
```

1          THE COURT:  In other words, if you receive a

2    sentence of 240 months or less, you cannot challenge

3    your sentence on appeal or challenge your conviction on

4    appeal.

5          Do you understand that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Do you understand that you have

8    certain obligations in paragraph 4 and 5 under this

9    agreement?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And you've discussed those

12    obligations with your lawyer?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  You understand that you have

15    forfeiture obligations.  In other words, you're

16    agreeing that you have to give up certain property or

17    money that's alleged to be part of your conspiracy.

18          Do you understand that?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Okay.  Can you go to page 9?  At

21    the end of paragraph 14, the last sentence, do you

22    understand that when the government is signing this

23    agreement, they are not making any promises or

24    representations as to what sentence Judge Amon will

25    impose upon you.

1              Do you understand that?

2              THE DEFENDANT:  Yes, that's clear to me,

3    your Honor.

4              THE COURT:  Now go to page 10, paragraph 17.

5    Do you understand that if you attempt to withdraw your

6    guilty plea, the statements you make today could be

7    used by the government in a prosecution?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Do you understand -- we

10   discussed this a little bit before I began.  If for

11   some reason you're not a United States citizen,

12   pleading guilty to a crime like conspiracy to commit

13   wire fraud could affect your ability to stay in the

14   United States.

15             Do you understand that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  But I understand from you and

18   your lawyer that you were born in the United States,

19   but I'm required to inform you because I inform every

20   defendant of that, because I cannot confirm what

21   someone's immigration status is independently.

22             Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Is there any other provision the

25   government believes I need to discuss with Mr. Weisson

1    specifically?

2             MR. WARDEN:  No, your Honor.

3             THE COURT:  Counsel, any other provision?

4             MR. RASHBAUM:  No, your Honor.

5             THE COURT:  Mr. Weisson, I want to explain

6    to you how the sentencing guidelines work to make sure

7    you understand.  Judge Amon is going to undertake an

8    analysis to determine what sentence to impose upon you.

9    As a first step, she's required to consider what are

10   known as the advisory sentencing guidelines.  They're

11   issued by the United States Sentencing Commission.

12   Those guidelines, based on your characteristics --

13   based on your characteristics and the crime that you're

14   pleading guilty to lead to what's known as a guideline

15   range, okay?  And that's not mandatory on Judge Amon.

16   In other words, she's not required to impose what the

17   guideline range is.  It's advisory but it's still

18   important to her in her sentencing determination and

19   she's required to look at that guideline range.

20             Do you understand that?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Because the guideline range --

23   let me start that part again.  The second thing that

24   Judge Amon would do is determine whether there are any

25   factors that would allow her to depart either upwardly

1   or downwardly from the guideline range.

2            Do you understand that?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  In addition, there's a federal

5   sentencing law and there are certain things, factors

6   that are listed in that sentencing law, and Judge Amon

7   has to consider those factors in determining your

8   sentence.  What are those factors?  Those are things

9   like your background, who you are, what crime you've

10  committed, things like that.  Based on that analysis,

11  what's known as a non-guideline sentence may be

12  appropriate.

13           The bottom line of me telling you this, that

14  she will consider the sentencing guidelines, that she

15  has the authority to impose a sentence more severe or

16  less severe or potentially impose a non-guideline

17  sentence -- the reason I'm telling you that is, until

18  the date of sentencing, you cannot know with certainty

19  what your sentence will be.

20           Do you understand that?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  We don't have a sentencing date

23  yet.  Your lawyer and the government are going to reach

24  out to Judge Amon to figure out what the sentencing

25  date would be, okay?  But prior to the date, the

1    Probation Department will issue a report.  That report

2    will recommend to Judge Amon a guideline range.  It

3    will also report -- the report will also contain facts

4    about you and your case that the Probation Department

5    has found, and you'll have an opportunity to review

6    that report with your lawyer and object to any facts

7    that you think are incorrect.

8              Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Despite what I've said, it's

11   important for you to know what the potential guideline

12   range would be, and that's based on the facts that are

13   known now.  This is a guess that could be wrong.

14             Do you understand that?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  What's the government's estimate

17   about the guideline range?

18             MR. WARDEN:  Your Honor, the government's

19   estimate of the guideline range is a total offense

20   level of 45 before acceptance of responsibility.

21   Assuming a three-level reduction for acceptance gives

22   us an offense level of 42 and a guideline range of 360

23   months to life, but it's capped at 240 months by

24   operation of the statutory maximum sentence.

25             THE COURT:  Mr. Weisson, the government

1    estimates that the guideline range calculation here

2    would lead to a sentence of 360 months to life in

3    prison.  However, because as I explained before, the

4    maximum time in prison under this count is twenty

5    years.  That means the effective guideline range here

6    is 240 months.

7                Do you understand that?

8                THE DEFENDANT:  Yes, your Honor.

9                THE COURT:  Do you understand that this

10   estimate is not binding on the government, the

11   Probation Department, or Judge Amon?

12               THE DEFENDANT:  Yes, I understand, your

13   Honor.

14               THE COURT:  Counsel, have you discussed the

15   guidelines and the guideline range with your client?

16               MR. RASHBAUM:  Yes, your Honor, and we're in

17   agreement with the government.

18               THE COURT:  Mr. Weisson, do you understand

19   that if your lawyer's estimate is wrong, you will not

20   be permitted to withdraw your plea of guilty?

21               THE DEFENDANT:  Yes, your Honor, I

22   understand.

23               THE COURT:  Just to confirm, you understand

24   that Judge Amon is not bound by anything in the

25   agreement, what the government says, or what your

1    attorney says.  The guidelines sentence will be or what

2    their prediction is on what sentence you will receive.

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Judge Amon will sentence you

6    based on her understanding and interpretation of the

7    sentencing guidelines and the law.

8              Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  And you understand that she has

11   the authority to impose a sentence that's either more

12   severe or less severe than the guidelines range or

13   imposing a non-guideline sentence?

14             Do you understand that?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Also, under the federal

17   sentencing system, for individuals who are sentenced

18   now, there is no parole board or parole commission.

19   What that means is, practically speaking, whatever

20   sentence you do receive from Judge Amon, you will not

21   be able to apply to a parole board or parole commission

22   to get out early because there are no parole boards or

23   parole commissions for individuals who are sentenced

24   now under the federal sentencing system.

25             Do you understand that?

1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  Do you have any questions you

3    want to ask me about the charge, your rights, or

4    anything else that may not be clear?

5            THE DEFENDANT:  I have no questions, your

6    Honor.

7            THE COURT:  Are you ready to plead, sir?

8            THE DEFENDANT:  I'm ready, your Honor.

9            THE COURT:  Counsel, do you know any reason

10    why your client should not enter a plea of guilty to

11    Count 1 of the indictment?

12            MR. RASHBAUM:  No, your Honor.

13            THE COURT:  Are you aware of any complete

14    legal defense to the charge that would prevail at a

15    trial?

16            MR. RASHBAUM:  No, your Honor.

17            THE COURT:  Mr. Weisson, how do you plead to

18    Count 1 in the indictment, conspiracy to commit wire

19    fraud, guilty or not guilty?

20            THE DEFENDANT:  I plead guilty, your Honor.

21            THE COURT:  Are you making this guilty plea

22    voluntarily and of your own free will?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  Has anyone threatened you or

25    forced you or pressured you to plead guilty today?

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Other than the agreement, has

3    anyone made any promises to you that have caused you to

4    plead guilty today?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  Has anyone promised you what

7    sentence you would receive from Judge Amon if you pled

8    guilty?

9          THE DEFENDANT:  No, your Honor.

10          THE COURT:  Sir, can you tell me in your own

11    words what you did that leads you to believe that

12    you're guilty of a crime?

13          THE DEFENDANT:  Yes.  I have a document that

14    I would like to read.

15          THE COURT:  Okay, that's fine.  I only ask

16    that you read it slowly so that I can understand and

17    more importantly, that the machine can capture it,

18    okay?

19          THE DEFENDANT:  Yes, your Honor.  Roberto

20    Gustavo Cortes Ripalda and I were the owners of

21    Southbay Holdings, LLC, which was a majority

22    shareholder of Biscayne Capital.  Between 2013 and

23    2018, I and others, including Roberto Gustavo Cortes

24    Ripalda and Fernando Haberer Bergson, agreed to make a

25    series of material representations and omissions to

1  actual and potential investors of Southbay Holdings and

2  Biscayne Capital in order to induce them to invest in

3  financial products.

4          Among other things, I and others, including

5  Roberto Gustavo Cortes Ripalda and Fernando Haberer

6  Bergson, informed investors that their investments

7  would be used to develop real properties owned by

8  Southbay Holdings or other entities, and that their

9  investments would be secured by a first mortgage.  At

10 the time, I knew but failed to disclose that Southbay

11 Holdings and its subsidiaries were insolvent.  The

12 investor funds were not being used to develop real

13 properties but to cover its obligations to other

14 investors, and that many of the properties were already

15 subject to first mortgages.

16         THE COURT:  When you said you agreed to make

17 a series of omissions, did you say before that

18 representations or misrepresentations?

19         THE DEFENDANT:  Material misrepresentations,

20 your Honor.

21         THE COURT:  Material misrepresentations,

22 okay.  When you entered into this agreement with the

23 people you've identified to make these

24 misrepresentations and omissions, did you know what you

25 were doing?

```
1                    THE DEFENDANT:  Yes, your Honor.

2                    THE COURT:  Okay.  And you voluntarily

3    entered into that agreement?

4                    THE DEFENDANT:  Yes, your Honor.

5                    THE COURT:  Okay.  Was the plan to

6    communicate these misrepresentations or omissions

7    through either email or telephone or other wire

8    communications?

9                    THE DEFENDANT:  Yes, your Honor.

10                   THE COURT:  Okay.  Does the government want

11   to say anything about venue and the Eastern District of

12   New York?

13                   MR. WARDEN:  Yes, your Honor.  As part of

14   the conspiracy, the defendant and his coconspirators at

15   times wired money through the Eastern District of New

16   York and engaged in email and phone communications

17   through the Eastern District of New York.

18                   THE COURT:  Counsel, would you stipulate

19   that the objective was to communicate through the wires

20   through Eastern District of New York?

21                   MR. RASHBAUM:  One of the objectives, yes.

22                   THE COURT:  Does the government believe the

23   allocution is sufficient?

24                   MR. WARDEN:  Yes, your Honor.

25                   THE COURT:  Do you believe any other
```

1    allocution is necessary at this point?

2            MR. WARDEN:  No, your Honor.

3            THE COURT:  Counsel, do you believe that the

4    allocution is sufficient?

5            MR. RASHBAUM:  Yes, your Honor.

6            THE COURT:  Okay.  Based on the information

7    that's been given to me, I find that Mr. Weisson is

8    acting voluntarily, that he fully understands the

9    charge against him, his rights, and the consequences of

10   his plea, and that there is a factual basis for the

11   plea.  It's therefore my recommendation to Judge Amon

12   that she accept Mr. Weisson's guilty plea to Count 1 in

13   the indictment charging conspiracy to commit wire

14   fraud.  As I indicated, the parties are to contact

15   Judge Amon for a sentencing date.

16           Mr. Weisson, you're currently out on bail.

17   Do you understand that?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  You're subject to certain

20   conditions of that bail, in other words certain things

21   that you have to do, and you're under the supervision

22   of Pretrial Services, things like that.

23           Do you understand that?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  You remember when you were told

1    about what those conditions were and what the

2    consequences were?

3                THE DEFENDANT:  If I recall correctly, when

4    I, you know, went up in bail.

5                THE COURT:  Yes.  When you were arraigned on

6    the indictment and you were released on bail, were you

7    subject to certain conditions and you were told what

8    the consequences were of violating those conditions?

9                THE DEFENDANT:  Yes, your Honor.

10               THE COURT:  Okay.  Does the government

11   believe that the current bail conditions are

12   sufficient?

13               MR. WARDEN:  Yes, your Honor.

14               THE COURT:  Counsel, do you agree?

15               MR. RASHBAUM:  Yes, your Honor.

16               THE COURT:  Mr. Weisson, I'm releasing you

17   on those same conditions and those same consequences

18   apply.

19               Do you understand that?

20               THE DEFENDANT:  Yes, your Honor.

21               THE COURT:  Okay.  I must tell you also,

22   however, if you were to violate any of those

23   conditions, because you've now entered a plea of

24   guilty, Judge Amon could take that into account in

25   determining your sentence.

```
 1              Do you understand that?

 2              THE DEFENDANT:  Yes, your Honor.

 3              THE COURT:  Do you have any questions about

 4      the condition or the consequences of violating those

 5      conditions of bail?

 6              THE DEFENDANT:  I have no questions, your

 7      Honor.

 8              THE COURT:  Anything else?

 9              MR. WARDEN:  No, your Honor.

10              THE COURT:  Anything else?

11              MR. RASHBAUM:  No, your Honor, thank you.

12              THE COURT:  I wish you all good health.

13      Have a nice day.

14              MR. RASHBAUM:  Thank you.

15              MR. WARDEN:  Thank you, your Honor.

16                      * * * * * * *

17

18

19

20

21

22

23

24

25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18     I certify that the foregoing is a correct

19 transcript from the electronic sound recording of the

20 proceedings in the above-entitled matter.

21

22

23

24

25 ELIZABETH BARRON                    April 22, 2022