

March 17, 2025

**VIA ECF**

Hon. Carol Bagley Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Cortes Ripalda, et al*, No. 21-cr-00458 (E.D.N.Y.)

Dear Judge Amon:

We represent siblings Diego and Mirta Romay (the "Romays"), as well as certain entities through which the Romays invested, including Rose Financial Limited Partnership ("Rose") and Silesia Limited Partnership ("Silesia"), both beneficially owned by Mirta Romay, Rado Limited Partnership ("Rado"), beneficially owned by Diego Romay, and Clodi Holdings Ltd. ("Clodi"), created by Diego Romay for the benefit of his wife and minor children (collectively the "Investment Entities"). We submit this letter in response to the February 11, 2025 submission by Roberto Cortes (Dkt. 212) and the February 12, 2025 submission by Carlos Legaspy on behalf of Insight Securities ("Insight") (Dkt. 213).

As detailed in our letter of February 7, 2025 (Dkt. 205), the Romays, through the Investment Entities, are victims under the Mandatory Victim Restitution Act ("MVRA") in this case, as well as certain related cases,[1] and suffered losses exceeding $50 million that were proximately caused by defendant Roberto Cortes and his co-conspirators (collectively the "defendants"). We understand that the government is seeking restitution on our clients' behalf.

I. **Roberto Cortes' Attacks on the Romays' Loss Amounts are Baseless**

In his letter of February 11, 2025, Dkt. 211, Roberto Cortes does not dispute that the Romays are victims. He quibbles, however, with "the Government's restitution figures," Dkt. 211 at 3, singling out Mirta Romay's loss amount through Rose and Silesia as an example of

---

[1] The related cases include *United States v. Cortes*, No. 22-cr-00288 (E.D.N.Y.); *United States v. Trujillo*, No. 19-cr-00134 (E.D.N.Y.); and *United States v. Gomez*, No. 22-cr-65 (E.D.N.Y.).



purportedly "flawed assumptions." He speculates that Rose and Silesia may have earned over $16.8 million in interest on the Proprietary Products over a 7-year period, and somehow claims that Mirta Romay therefore profited "at the expense of other investors." He further speculates that the "Adviser received 2% commissions paid twice" during this same period, but fails to explain why, if true, that would demonstrate a flaw in restitution calculations or otherwise support a different reduced restitution award for the Romays.

These points are irrelevant to the amount of restitution that should be paid to our clients, and Mr. Cortes' assertions of flawed assumptions are factually off the mark. Most of the losses that Mirta Romay suffered – nearly $26 million – were through investment activity in the Rose accounts. The first Proprietary Products were purchased into the Rose accounts in mid-2016, and the heavy investing in the Proprietary Products did not take place until late 2016 and 2017—the year before the scheme ended. Therefore, Mr. Cortes' hypothesis about earnings and commissions over a 7-year period is irrelevant, at least to Mirta Romay. More broadly, purported interest reflected on the account documentation is orders of magnitude smaller than the figures Mr. Cortes asserts now.

With respect to commissions, the account documentation further undermines his arguments. The documentation shows that commissions paid from the accounts went to Biscayne Capital – and not an independent advisor, as Mr. Cortes suggests – and totaled only approximately $33,000. Because these payments went to the defendants' own company, and that company was used to defraud our clients, it makes no sense to argue that such payments should reduce the amount of restitution to which our clients are entitled. We can provide additional documentation about these accounts at the Court's request, though we submit that what we and the Government have already provided is ample to reject Cortes's arguments.

In addition, Mr. Cortes incorrectly asserts that a settlement by the Biscayne Capital liquidators with Deutsche Bank "has benefited victims" such that the restitution calculation should be offset by the victims' recoveries. Our clients have not received any amount from this settlement or otherwise through the liquidations, and we expect that any distribution that they do receive, to the extent that there is one at some point in the future, will cover only a small fraction of their losses. Therefore, there is no basis for a setoff based on distributions through the liquidations at this point. To the extent the Romays receive any future recoveries that would impact their overall loss amount, the Romays commit to so informing defendants and the Court.



## II. Insight Caused Significant Harm to the Romays and Should not be Entitled to Restitution

The points raised in Mr. Legaspy's letter do not support a restitution award for Insight or impact the Romays' entitlement to restitution. However, we write briefly to respond to certain false and disparaging assertions that Mr. Legaspy makes about the Romays and to explain the harm that he and Insight have caused them.

As explained in the Indictment (¶¶ 55-57), approximately $6 million of the Romays' total loss amount was stolen from the Clodi account at Insight when defendant Fernando Haberer sent to Insight falsified payment instructions, and Insight transferred out nearly the entirety of that account's investment portfolio.

The Romays are undeniably unwitting victims of the Ponzi scheme perpetrated by the defendants, and their massive losses were suffered while the Investment Entities' assets were held with trusted custodians, including Insight, who should have had controls in place to prevent the theft of their assets. Despite the financial and personal harm that has been caused to the Romays, which they describe in their victim impact statements, and Insight's duties as custodian of one of the impacted accounts, Insight and Mr. Legaspy have repeatedly attacked the Romays, essentially seeking to blame them for their own losses. Insight and Mr. Legaspy twice initiated legal proceedings *against* Diego Romay, Rado, and Clodi, even going so far as to assert – illogically – that Mr. Romay conspired with defendant Fernando Haberer to defraud himself. Mr. Romay, Rado, and Clodi incurred substantial legal fees responding to these baseless claims, which also caused significant personal harm on top of the trauma that the Romays had already suffered.

Ultimately, Insight voluntarily dismissed the claims. But Insight and Mr. Legaspy inflicted further harm on the Romays by repeatedly making false and disparaging assertions about them, including in Mr. Legaspy's recent submission to this Court. Though Mr. Legaspy acknowledges that the Romays were "victimized by the defendant's actions," he proceeds to assert that there was "collusion" between the Romays and Haberer in an effort to "frame" service providers, and implies that there were nefarious motives behind the Romays' recovery efforts. Dkt. 213 at 2-3. There is no merit to any of these assertions, and the Romays vehemently reject them. Insight's and Mr. Legaspy's failure to exercise appropriate controls that could have prevented a significant portion of the underlying fraud, together with their scorched-earth litigation tactics, including the disparagement of victims and the filing of baseless litigation, support the conclusion that Insight should not receive a restitution award.



Finally, as Mr. Romay explains in his declaration of losses, Mr. Romay did not personally receive any compensation from Insight. Arbitration proceedings brought against Insight by Clodi and family members of Mr. Romay, all victims of the defendants' scheme, resulted in a settlement. With Mr. Romay's consent, all settlement proceeds went to his family members.

* * *

Based on the foregoing information and the Romays' other restitution-related submissions, we respectfully request that the Court prioritize restitution to the Romays and award restitution for the full amount of their losses, as detailed in our letter of February 7, 2025 (Dkt. 205) and the Romays' declarations of losses. Further, in light of the limited assets that will be available to pay a restitution order, Insight's failure to meet the statutory requirements for an award of restitution under the MVRA, and Insight's and Mr. Legaspy's failure to prevent much of the underlying fraud and their baseless attacks on the Romays, we submit that it would be both appropriate and within the Court's discretion to deny Insight's request for restitution.

Respectfully submitted,

**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**

By: */s/ Solomon B. Shinerock*
Solomon B. Shinerock
Cristián Francos
Chiara Spector-Naranjo

*Counsel for the Romays*

cc: Counsel of record (via ECF)